UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER ZENO, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-4326** |
| **ADM MILLING COMPANY, ET AL** | **SECTION "K"(5)** |

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed on behalf of ADM Milling Company (hereinafter "ADM") (Rec. Doc. 28). Zeno opposed ADM's Motion for Summary Judgment (Rec. Doc. 41), and ADM responded to Zeno's opposition (Rec. Doc. 50). Gemini Insurance Company also filed a memorandum in support of ADM's Motion for Summary Judgment (Rec. Doc. 46). The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and finds that ADM's Motion for Summary Judgment is GRANTED for the following reasons.

## I.     BACKGROUND

Christopher Zeno was a borrowed employee for ADM.[1] Zeno's job duties included sweeping, picking up grain, throwing grain on belts, and cleaning up around ADM's plant in connection with ADM's grain transfer and storage operations. Zeno's duties required him to utilize a manlift located on the property of and maintained and operated by ADM. On the morning of July 18, 2005, Zeno allegedly sustained an injury after falling between thirty and

---

[1] Zeno concedes he was a borrowed worker for ADM, as he failed to contest his status as a borrowed worker for ADM in Plaintiff's Memorandum in Opposition to Motion for Summary Judgment (Rec. Doc. 41).

fifty feet from the manlift.  Zeno alleges that he was thrown from the manlift as the result of a mechanical malfunction by the manlift.  Zeno further alleges that the manlift's mechanical malfunction was caused by ADM's alleged failure to properly maintain and repair the forty-three year-old manlift.  Zeno has filed suit against ADM and seeks an award of damages for ADM's alleged failure to properly maintain the manlift.  ADM has filed a motion requesting summary judgment in this matter.

## II.     LAW AND ANALYSIS

Summary judgment should be granted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In reviewing a motion for summary judgment, the court views all facts in the light most favorable to the non-movant.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  ADM contends that there is no genuine issue of material fact in regard to Zeno's tort claim.  The Court agrees.

Under Louisiana law, an employee's sole remedy against his borrowing employer for injury suffered on the job is worker's compensation.  *See* La. Rev. Stat. Ann. § 23:1031 (2008).  However, an employer is liable in tort for an employee's injury if the injury is caused by the employer's intentional tortious act.  *See* La. Rev. Stat. Ann. § 23:1032(B) (2008).  This "intentional acts" exception has been construed very narrowly by Louisiana courts.[2]  For an

---

[2] *See Bazley v. Tortorich*, 397 So. 2d 475, 481-82 (La. 1981); *Bridges v. Carl E. Woodward, Inc.*, 94-2675 (La. App. 4 Cir. 10/12/95), 663 So. 2d 458, 462-63 (noting that an overwhelming majority of intentional acts cases result in summary judgment in the employer's favor); *Tapia v. Schwegmann Giant Supermarkets, Inc.* 590 So. 2d

action to be intentional, the person acting must either (1) consciously desire to bring about the physical results of his act, or (2) believe those results are substantially certain to follow from his conduct. *Bazely v. Tortorich*, 397 So.2d 475, 482 (La. 1981). In the present case, Zeno does not allege that ADM consciously desired to bring about the physical injury of an employee. Rather, Zeno contends that ADM was substantially certain that its neglect in properly repairing the manlift would cause a physical injury to an employee.

Knowledge and appreciation of a risk, reckless or wanton conduct, or gross negligence does not constitute the intent required for an intentional act.[3] Moreover, an employer's failure to supply safety devices and/or adhere to safety regulations does not constitute an intentional act. *Bridges v. Carl E. Woodward, Inc.*, 94-2675 (La. App. 4 Cir. 10/12/95); 663 So. 2d 458, 463. For example, in *Jacobson v. Southeast Distributors, Inc.*, an employer's refusal to provide its employee with a requested safety device did not create a substantial certainty that injury to the employee would occur. 413 So. 2d 995, 998 (La. Ct. App. 1982), writ denied 415 So. 2d 953 (La. 1982). Similarly, in *Gallon v. Vaughn Contractors, Inc.*, allegations that an employer failed to maintain a safe workplace and failed to correct unsafe work conditions simply amounted to allegations of negligence. 619 So.2d 746, 749 (La. Ct. App. 1993). The employer's negligence did not constitute an intentional act. *Id.* at 748.

In contrast, a defendant acts with substantial certainty when it knows that injury to an employee is inevitable or extremely likely to occur as a result of its action. *See Felder*, 1998 WL

---

806, 807 (La. Ct. App. 1991) (stating that the intentional acts exception is narrowly interpreted); *Babin v. Edwards*, 456 So. 2d 659, 662 (La. Ct. App. 1984) ("[A]lmost without exception, a narrow interpretation [of the intentional act exclusion] has been adopted" (quoting Johnson, *Developments in the Law, 1980-1981-Workers' Compensation*, 42 La. L. Rev. 620, 630) (internal quotation marks omitted)).

[3]*Gaspard v. Orleans Parish School Bd.*, 96-1754 (La. App. 4 Cir. 2/5/97), 688 So. 2d 1298, 1301-02; *Brown v. Diversified Hospitality Group, Inc.*, 600 So. 2d 902, 907 (La. Ct. App. 1992); *Tapia*, 590 So. 2d at 807-08.

774179, at *2 (E.D. La. Oct. 30, 1998) (holding that substantial certainty means that the employer knew that it was "extremely likely" that harm would result from its actions); *see Gallon v. Vaughn Contractors, Inc.*, 619 So.2d 746, 748 (La. Ct. App. 1993) ("[Intentional] has been interpreted as being equivalent to 'inevitable,' 'virtually sure,' and 'incapable of failing.'").

For example, in *Wainwright v. Moreno's Inc.*, an employee was injured when a ten-foot-deep ditch he was digging on a construction site caved in. 602 So.2d 734, 737 (La. Ct. App. 1992). The employer was aware that that same ditch had caved in on the previous day. *See id.* at 739. Evidence in the case indicated that the employer knew that another cave-in was inevitable. An engineer informed the employer that "the soil was sloughing off the sides of the ditch and that no one should be allowed in the ditch without protection." *Id.* This engineer also "told [the employer] that the dirt in which [the employees] were digging was unstable and no one should be allowed in the ditch until [the employer] protected the ditch against cave-in." *Id.* The employer even considered the soil to be unstable. *Id.* Despite the engineer's warnings that a cave-in was inevitable, and despite the employer's own observation that the soil was unstable, the employer ordered his employees, including the plaintiff-employee, to continue working in the ditch. *Id.* Because of the employer's knowledge of the previous cave-in, because of the employer's knowledge and recognition that the unstable soil indicated that another cave-in was inevitable, and because of the employer's knowledge that a cave-in of a ten-foot-deep ditch was extremely likely to injure anyone in the ditch at the time, the employer knew that ordering its employees to work in the ditch was extremely likely to cause injury to an employee. *See id.*

Similarly, in *Trahan v. Trans-Louisiana Gas Co.*, an employee was injured by his exposure to mercaptan gas. 618 So. 2d 30, 32 (La. Ct. App. 1993). The employee "was exposed to amounts of mercaptan that were so excessive that it was virtually impossible for [the

employee] not to become ill." *Id.* Moreover, the employer knew that the employee had become ill on two previous occasions after being exposed to mercaptan gas at work. *Id.* The employer nonetheless ordered the employee to work in an environment where he would again be exposed to mercaptan without protective equipment. *Id.* Because the employer had knowledge of the employee's previous illnesses due to exposure to mercaptan, the employer knew that ordering the employee to again work around mercaptan was extremely likely to cause the employee to suffer another mercaptan-related illness. *See id.* at 31.

Likewise, in *Major v. Fireman's Fund Insurance Co.*, an employee was injured by his exposure to dangerous chemicals at work. 506 So. 2d 583, 584 (La. Ct. App. 1987). The employee's doctor told him not to work around the chemicals. *Id.* The employee informed his employer of the doctor's medical recommendation. *Id.* The employee also informed the employer that the protective mask the employer had given him to wear was defective. *Id.* The employer nonetheless ordered the employee to work in an environment where he would be exposed to the dangerous chemicals. *Id.* Even after witnessing the employee sustain injury from the chemicals, the employer ordered the employee to continue working with the chemicals. *Id.* The employee testified in his affidavit:

> The foreman at Valentine Sugars saw blood coming from my nose while I was working with the chemicals and I told him that I should not be working with the chemicals. He wanted me to keep on working with the chemicals even though he knew it was making my nose bleed.

*Id.* Because the employer had knowledge of the doctor's warning and because the employer witnessed the employee sustain injury due to exposure to the chemicals, the employer knew that ordering the employee to work in an environment where he would continue to be exposed to the

chemicals would inevitably or was extremely likely to cause injury to the employee.  *See id.*

In the present case, Zeno has provided no evidence to support the contention that ADM's failure to properly maintain the manlift was an intentional act.  Although Zeno contends that the manlift has had "a long history of problems" (Rec. Doc. 41 at 5), these problems have been isolated to mechanical defects, which a third-party contractor hired by ADM to annually inspect the manlift had noticed (Rec. Doc. 41 at 2-3).  Zeno has failed to assert evidence that the manlift has a history of causing injury to employees due to improper maintenance and repair on the manlift.[4]  Zeno has not asserted that ADM knew there were previous injuries caused by its failure to properly maintain and repair the manlift.  At most, Zeno has only provided evidence that there have been subsequent accidents or injuries involving the manlift (*See* Rec. Doc. 41 at 5-6).  Unlike the employee in *Trahan* and the employee in *Major*, who both complained to their employers about the inevitability of their sustaining an injury due to the dangerous work condition, Zeno has submitted no evidence that he complained to ADM about a previous injury or about the inevitability of his sustaining an injury due to the condition of the manlift.  *Trahan*, 618 So. 2d 32; *Major*, 506 So. 2d 584.  Also, unlike the employer in *Wainwright*, who knew that a cave-in was inevitable and that anyone caught in the cave-in was extremely likely to sustain injury, Zeno has presented no evidence to suggest that ADM knew that the mechanical defects would inevitably cause or were extremely likely to cause an employee to sustain injury by being thrown from the manlift.  *Wainwright*, 602 So.2d 739.  Thus, this Court concludes that ADM did not have sufficient knowledge that a mechanical malfunction of the manlift, caused by ADM's alleged failure to properly maintain and repair the manlift, would inevitably or was extremely

---

[4]In fact, ADM contends that it has used the manlift for forty-plus years without any accidents or injuries (Rec. Doc. 50 at 7-8).  Zeno has not presented evidence that controverts ADM's contention.

likely to lead to the injury of an employee using the manlift.  Because ADM lacked the requisite knowledge required to commit an intentional act, ADM's alleged failure to properly maintain and repair the manlift was not an intentional act.  Therefore, Zeno's sole remedy for his injury sustained at ADM's facility is worker's compensation.

For the foregoing reasons, the Court finds that ADM is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of the defendant, ADM Milling Company, is hereby **GRANTED.**

New Orleans, Louisiana, this __4th__ day of June, 2008.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**